Filed 6/3/24 (see dissenting opinion)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE ex rel. INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1319, AFL-CIO, <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF PALO ALTO, <br><br> Defendant and Respondent. | H049992 <br> (Santa Clara County <br> Super. Ct. No. 20CV365039) |

The question presented in this appeal is whether a successful challenge to a municipal charter provision, brought pursuant to Code of Civil Procedure section 803 (commonly referred to as a proceeding in quo warranto), requires invalidation of the provision. On these facts, we answer that question in the affirmative. We therefore reverse the judgment and remand with directions.

## I. FACTS AND PROCEDURAL BACKGROUND

This case returns to us a second time. In our previous opinion, we set out its factual and procedural background. (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271 (*City of Palo Alto*).) We describe here only pertinent details and subsequent proceedings.

A. *Overview*

In 2010 and 2011, the City of Palo Alto (city) faced a budget crisis. To reduce its labor costs, the city council contemplated altering a provision in its city charter that required submission of certain labor disputes with its public safety unions to binding interest arbitration. (Charter of the City of Palo Alto, former art. V., § 4 (article V).) The city believed Government Code section 3507[1] of the Meyers-Milias-Brown Act (MMBA) did not require prior good faith consultation with its public safety unions. (*City of Palo Alto*, *supra*, 5 Cal.App.5th at pp. 1279–1280.)

In July 2011, the city council adopted resolution 9189, proposing to city voters an amendment to the city charter to repeal article V and replace it with other dispute resolution procedures. (Palo Alto Res. No. 9189 (resolution 9189).) Pursuant to this resolution, the city held a special election in November 2011 in which its voters passed "Measure D," which repealed the binding interest arbitration provision from the city charter. (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1285.)

It has since become clear that the city erred in its interpretation of the MMBA. In subsequent litigation initiated by the city's firefighters' union, International Association of Firefighters, Local 1319, AFL-CIO (Local 1319), both the Public Employment Relations Board (PERB) and this court concluded the city violated section 3507 by enacting resolution 9189 and submitting Measure D to the voters without having previously engaged in good faith consultation with Local 1319. (See *International Assn. of Firefighters, Local 1319 v. City of Palo Alto* (*PERB City of Palo Alto I*) (2014) PERB Dec. No. 2388M [39 PERC ¶ 25, pp. 3–4]; *City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1292, *International Assn. of Firefighters, Local 1319 v. City of Palo Alto* (*PERB City of Palo Alto II*) (2017) PERB Decision No. 2388a-M [41 PERC ¶ 162, p. 2].)

---

[1] Unspecified statutory references are to the Government Code.

2

While the city's violation of the MMBA has now been established, the appropriate remedy has not. In its original administrative decision, PERB ordered the city council to rescind resolution 9189. (*PERB City of Palo Alto I*, *supra*, Dec. No. 2388-M at p. 49 [39 PERC ¶ 25]; *City of Palo Alto*, *supra*, 5 Cal.App.5th at pp. 1310–1311.) On appeal, this court affirmed PERB's decision that the city had violated the MMBA but disapproved of PERB's ordered remedy. (*City of Palo Alto*, at p. 1278.) This court decided PERB's rescission order violated the separation of powers doctrine but concluded PERB may invalidate resolution 9189 by declaring it void. (*Id*. at p. 1316.) This court remanded the matter to PERB to determine whether to do so. (*Id*. at p. 1320.)

On remand, PERB reaffirmed its conclusion that the city had violated the MMBA in enacting resolution 9189. (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at p. 44 [41 PERC ¶ 162].) PERB issued an order that declared resolution 9189 void. (*Id*. at p. 53.) PERB also directed the city to meet and consult with representatives of Local 1319 upon request. (*Id*. at p. 54.)

Despite PERB's order that resolution 9189 was void, the city took no steps to restore article V as it existed prior to its amendment by Measure D. To directly challenge Measure D, Local 1319 sought authorization from the Attorney General to bring a quo warranto action. The Attorney General granted Local 1319 leave to sue in quo warranto "to determine whether City of Palo Alto Measure D is invalid." (103 Ops.Cal.Atty.Gen. 1, 4 (2020).) The substantive relief requested by the complaint approved and signed by the Attorney General is a judgment determining Measure D to be "null and void" and restoring the preamendment portion of article V.

The trial court decided in the quo warranto proceedings that the city violated the MMBA in enacting resolution 9189. However, the trial court did not declare Measure D invalid. Balancing a variety of factors, including "the clearly expressed will of the local electorate," the trial court issued a multi-step order that suspends the operation of the charter's current dispute resolution procedures, requires good faith consultation between

3

the city and the public safety unions on the subject, and retains jurisdiction with the possibility of a future finding of invalidity of Measure D.

B. *This Court's Prior Opinion*

In its prior opinion, this court agreed with PERB that the city failed to meet its obligation to consult in good faith before adopting resolution 9189 and in so doing violated section 3507. (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1292.) This court also rejected the city's contention that PERB's decision that the city violated section 3507 should not be "retroactively applied, because it . . . would unfairly disenfranchise the City's voters." (*Id*. at p. 1300.) The decision deemed unpersuasive the city's citation to cases in which courts elected not to invalidate electoral decisions based on procedural irregularities. It noted, PERB's decision "clarified that its remedial authority did not extend to invalidating the results of the municipal election. That remedy lies exclusively with the courts in an action in quo warranto." (*Id*. at p. 1301.)

This court decided that PERB lacked the authority to direct the city council to rescind a resolution because, "as a quasi-judicial agency[, it] cannot compel legislative action without violating the separation of powers doctrine." (*City of Palo Alto*, *supra*, 5 Cal.App.5th at pp. 1310–1311.) Nevertheless, this court decided it would be within PERB's powers to declare the resolution to be void, which "effectively returns the parties to the status quo ante. [Citations.] It has the affirmative effect of 'undoing' the invalid act without impermissibly infringing on legislative powers." (*Id*. at p. 1317.)

Noting under section 3509, subdivision (b), " 'The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board . . .'," this court remanded the matter to PERB so that it may determine whether this remedy should be ordered. (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1320.)

4

B. *2017 PERB Decision*

Following this court's decision, PERB vacated its previous decision and issued new Decision No. 2388a-M.  (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M [41 PERC ¶ 162].)

PERB concluded that the city "violated the MMBA by: (1) failing or refusing to perform its duty under section 3507 to consult in good faith over rules and regulations for the administration of employer-employee relations, in particular, interest arbitration procedures for the resolution of collective bargaining disputes, and (2) having failed to consult in good faith beforehand, placing on the ballot an amendment to the Charter to repeal [a]rticle V thereof."  (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at pp. 48–49 [41 PERC ¶ 162].)

With respect to remedy, PERB stated, "Our traditional remedy in a unilateral change case is a cease and desist order, coupled with affirmative relief consisting of an order to restore the prior status quo and an order to meet and confer upon request. [Citations.]  A policy change subject to the duty to meet and confer and implemented without meeting and conferring, is a fait accompli, which, if left in place, would compel the union to 'bargain back' to the status quo [citations] and make impossible the give and take that are the essence of good faith consultation.  [Citation.]  Because the MMBA duty to consult in good faith under section 3507 is indistinguishable from the MMBA duty to meet and confer under section 3505, we conclude that the appropriate remedy for a violation of the duty to consult is akin to the remedy for a violation of the duty to meet and confer, viz., a cease and desist order, coupled with affirmative relief consisting of an order to restore the status quo and an order to consult in good faith upon request."  (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at p. 49 [41 PERC ¶ 162].)

PERB rejected the city's objections that, by having referred Measure D to the voters, the city's constitutional home-rule privileges insulated it from PERB's remedial reach.  PERB stated, "As noted in [*Local 21, International Federation of Professional*

*and Technical Engineers, AFL-CIO v. Thornton C. Bunch, Jr.* (1995)] 40 Cal.App.4th 670, 676 'the extent to which local regulation of employment matters as prescribed by the charter might be superseded by matters of statewide concern as set out in the [MMBA]—is a matter properly decided in the first instance, by PERB.' (*Ibid.*) Exercising this authority, we decide that our precedents compel the result we reach, viz., that in addition to cease and desist orders, affirmative relief is also appropriate, including an order declaring void the [c]ity's action of July 18, 2011, referring to voters a measure to repeal [a]rticle V of the Charter, coupled with an order directed to the [c]ity itself to consult in good faith upon request." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at pp. 51–52 [41 PERC ¶ 162].)[2]

After PERB issued its decision, Local 1319 and the city disagreed about whether the city complied with PERB's orders. It is undisputed that the city has not reinstated article V as it existed before the passage of Measure D.

### C. *Quo Warranto Proceedings*

#### 1. Attorney General Authorization of Leave to Sue

On July 12, 2019, Local 1319 sought leave from the Attorney General to bring the instant quo warranto action. The Attorney General gave Local 1319 leave to sue on February 7, 2020. (103 Ops.Cal.Atty.Gen., *supra*, at p. 1.)

In his written explanation of the authorization of leave to sue, the Attorney General noted that the legal remedy of quo warranto may be used to contest the validity

---

[2] In addition, PERB ordered the city to cease and desist from three categories of actions: (1) "[r]efusing to meet and consult with Local 1319 prior to adopting ballot measures to voters to establish or modify rules or regulations for the administration of employer-employee relations, including without limitation procedures for the resolution of collective bargaining disputes"; (2) "[i]nterfering with the right of bargaining unit employees to be represented by an employee organization of their own choosing"; and (3) "[d]enying Local 1319 their right to represent employees in their employment relations with the City." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at pp. 53–54 [41 PERC ¶ 162].) Those orders are not at issue in this appeal.

of a county charter provision.  (103 Ops.Cal.Atty.Gen., *supra*, at p. 1.)  The Attorney General explained the statutory basis for the use of the quo warranto procedure to challenge Measure D:  "Code of Civil Procedure section 803 codifies the legal remedy known as quo warranto.  The section provides, in pertinent part, that '[a]n action may be brought by the attorney-general, in the name of the people of this state . . . upon a complaint of a private party . . . against any corporation . . . which usurps, intrudes into, or unlawfully holds or exercise[s] any franchise, within this state.'  As a charter city, the City of Palo Alto is a public 'corporation.'  'Franchise' means 'right' or 'privilege' and includes a city charter.  It follows that 'quo warranto may lie to determine whether a public corporation is unlawfully holding or exercising a right or privilege ("franchise"), and, in this connection, it is an appropriate remedy by which to challenge the validity of the process by which a city or county charter was enacted or amended.' "  (*Id*. at p. 2, fns. omitted.)

The Attorney General considered "whether the particular facts and circumstances surrounding this application support granting leave to sue.  In making this determination, we do not attempt to decide the merits of the claim; rather, we ascertain whether the proposed relator has raised a substantial issue of fact or law warranting judicial resolution, and, if so, whether allowing a quo warranto action to proceed would serve the overall public interest."  (103 Ops.Cal.Atty.Gen., *supra*, at p. 3.)

The Attorney General concluded that "the issue of the validity of voter-approved Measure D is a matter of public interest, and that permitting the requested quo warranto action would serve this public interest.  Ordinarily, we view the need to resolve a substantial question of fact or law as constituting a sufficient public purpose to warrant granting leave to sue in quo warranto.  And here, as Local 1319 points out, 'the public has an interest in ensuring charter amendments are validly enacted in accordance with the law and securing stable employer-employee relations.'  We agree."  (103 Ops.Cal.Atty.Gen., *supra*, at p. 4, fns. omitted.)

7

## 2. Proceedings in the Trial Court

Local 1319 filed the complaint in this action on March 10, 2020. The complaint alleged one cause of action for quo warranto relief, on the basis that "an actual controversy exists, requiring judicial resolution to determine whether Defendant's charter amendment is invalid by reason of noncompliance with the MMBA and whether the [c]ity is required to restore Article V of the Charter as it existed before the amendment." It sought relief in the form of an order that the city restore the preamendment portion of article V of the city's charter requiring mandatory binding interest arbitration of collective bargaining impasses with police and firefighter employee organizations, and a determination that the charter amendment suspending article V is null and void.

In briefing, Local 1319 characterized the issue as whether the trial court "should invalidate the repeal of [a]rticle V's binding impasse arbitration procedures because the [c]ity failed to consult in good faith with Local 1319 before placing Measure D on the ballot." It argued that, because the city failed to meet and consult with Local 1319 in violation of its duty under the MMBA, a writ in quo warranto should issue to overturn Measure D.

The city argued that the election by the voters was not an unlawful exercise of a franchise and Measure D should not be overturned merely because the city council failed to comply with a procedural requirement "that did not have any ability to affect the ultimate vote" by the electorate. According to the city, "though PERB may hold that the [c]ity [c]ouncil violated the MMBA by failing to consult with IAFF prior to its July 18, 2011 resolution [submitting Measure D to the voters], the citizens of Palo Alto nevertheless retain their right to amend the [c]ity's charter, and where they have voted overwhelmingly in favor of doing so, that vote should not be overturned." The city stated there was no authority holding that a city council's MMBA violation must necessarily "invalidate the subsequent expressed will of the electorate."

8

The trial court issued its tentative ruling on July 26, 2021. Local 1319 requested a statement of decision pursuant to California Rules of Court, rule 3.1590(c)(4) and Code of Civil Procedure section 632. The trial court entered its statement of decision and order on February 22, 2022 (order).

In its order, the trial court held that the city's resolution to submit Measure D to the voters—without first having consulted in good faith with Local 1319—constituted the unlawful exercise of a franchise or privilege, although not the usurpation of a franchise or office, within the meaning of section 803. It further held that, given the procedural irregularity by which the city put Measure D on the ballot, the city "may not rely upon the passage of Measure D by a majority of voters."

With respect to the relief requested by Local 1319—invalidation of Measure D—the trial court observed that it had the authority to grant that relief. Nevertheless, it found "on the unique circumstances presented in this record—that the public interest is adequately served by a more incremental measure to remedy the [c]ity's unlawful exercise of a franchise it otherwise lawfully held."

The trial court reasoned that "the statutory scheme is conspicuously silent as to the judgment to be rendered in the event that a defendant is adjudged guilty not of usurpation, intrusion, or unlawful holding of an office, franchise, or privilege, but of unlawful past exercise of a franchise otherwise lawfully held." It added that it had "no doubt" the statutes vest the court with the authority to invalidate the results of the election—however, "where the unwarranted action is the unlawful exercise of an otherwise lawfully held franchise, the Legislature has not expressly mandated a specific remedy."

Further, the trial court found that the city's violation "was committed in good-faith reliance on a misinterpretation of section 3507." It noted that the electorate "overwhelmingly approved Measure D," and there was no evidence the city's violation of the MMBA was "materially prejudicial to Local 1319's interests." As a result, "[i]n an

9

effort to balance the competing interests of the parties, state, and voters, the [c]ourt concludes that the harm to the broader public interest in enforcement of the MMBA can be adequately remedied in this case by the [c]ity's compliance now with PERB's order for consultation in good faith, and by foreclosing any reliance by the [c]ity on Measure D's repeal of binding interest arbitration until it consults to agreement or impasse."

The trial court's order set out a graduated scheme of relief. It prohibited the city from forgoing article V's pre-2011 requirement of binding interest arbitration as to any contract negotiation with a recognized public safety employee organization affected thereby, unless and until it satisfies two conditions: (a) consulting in good faith—as to the modification or repeal of article V's pre-2011 requirement of binding interest arbitration, or any alternative procedures for the resolution of disputes involving wages, hours, and other terms and conditions of employment—with any and all of the affected public safety employee organizations that do not waive their entitlement to such consultation, and (b) after such consultation, taking legislative action to reaffirm commitment to repeal of article V's requirement of binding interest arbitration consistently with Measure D as approved in November 2011 by a majority of voters. The order also specified that the terms "consult in good faith" and "waiver" shall be defined consistently with section 3507 and any PERB or judicial precedent interpreting that element of section 3507 or an analogous provision of the MMBA.

The court retained jurisdiction of the matter for the limited purpose of issuing a final judgment invalidating Measure D, in the event consultation results in one of three possible outcomes: (a) "An agreement by the city and the affected public safety employee organizations to alternative procedures for the resolution of disputes involving wages, hours, and other terms and conditions of employment, including but not limited to binding interest arbitration on terms representing a modification of [a]rticle V of the [c]ity [c]harter as it existed prior to the passage of Measure D" ; (b) "A resolution by the [c]ity to pursue a charter amendment alternative to Measure D"; or (c) "A determination

10

by PERB that the [c]ity has once again failed to consult in good faith with the affected public safety unions."

The trial court entered judgment, and Local 1319 timely appealed.

## II. DISCUSSION

Appellants, joined by PERB and a number of other entities participating as amici curiae,[3] asks this court to reverse the trial court's judgment and order the invalidation of Measure D. Local 1319 argues the trial court lacked jurisdiction under the quo warranto statutes to order any remedy for the city's violation of section 3507 other than "exclusion," that is, invalidation of Measure D. Local 1319 contends the trial court erred in failing to defer to PERB's decision that ordering restoration of the status quo (i.e., before the city's failure to consult in good faith) was the appropriate remedy for the city's violation of the MMBA.

For its part, the city relies on the statutory argument embraced by the trial court in its order. The city contends that its violation of section 3507 amounted to unlawfully "exercis[ing] . . . any franchise." (Code Civ. Proc., § 803.) Code of Civil Procedure section 809, which requires as a remedy "exclus[ion] from the office, franchise, or privilege," does not mention exercising a franchise and therefore does not apply. The city contends that, because the trial court was not bound by Code of Civil Procedure section 809, the trial court had the discretion to fashion a remedy other than invalidation of Measure D. The city maintains that the trial court did not abuse its discretion in issuing its chosen remedy.

---

[3] We have read and considered briefs in support of Local 1319 submitted as amicus curiae by the Public Employment Relations Board; the Peace Officers Research Association of California and Peace Officers Research Association of California Legal Defense Fund; the California Professional Firefighters Association; the International Association of Firefighters; the Oakland Police Officers' Association, International Association of Fire Fighters, Local 55, AFL-CIO, San Francisco Police Officers' Association, International Association of Fire Fighters, Local 798, AFL-CIO, and Palo Alto Police Officers' Association, as well as the city's responses thereto.

11

Both parties agree that there is no precedent in California squarely addressing the question before us: whether a trial court has discretion, in a quo warranto proceeding where a city has been adjudged guilty of unlawfully holding or exercising a franchise, to do anything other than invalidate the measure enacted by the city's voters. To answer that question on these facts, we must first consider the role of PERB in MMBA adjudications and the Attorney General in quo warranto proceedings.

## A. *PERB's Authority and the City's Duty to Meet and Confer*

"PERB is the agency empowered by the Legislature to adjudicate unfair labor practice claims under the MMBA." (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 911 (*Boling*).) As the California Supreme Court has emphasized, " ' "PERB is 'one of those agencies presumably equipped or informed by experience to deal with a specialized field of knowledge, whose findings within that field carry the authority of an expertness which courts do not possess and therefore must respect.' " ' " (*Id.* at pp. 911–912.) PERB " 'has exclusive initial jurisdiction over claims of unfair practices, as defined by the MMBA.' " (*International Assn. of Firefighters, Local 230 v. City of San Jose* (2011) 195 Cal.App.4th 1179, 1209.) PERB has initial exclusive jurisdiction over both substantive violations and the appropriate remedies for violations of section 3507. "The initial determination as to whether the charge of unfair practice is justified and, if so, the appropriate remedy necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of [PERB]." (§ 3509, subd. (b).)

California courts have "long held that PERB's legal findings are entitled to deferential review. They will not be set aside unless clearly erroneous, though the courts as always retain ultimate authority over questions of statutory interpretation. The MMBA specifies that PERB's factual findings are 'conclusive' 'if supported by substantial evidence.' (§ 3509.5, subd. (b).)" (*Boling, supra*, 5 Cal.5th at p. 904, italics omitted.) Even in the case of undisputed facts, courts defer to PERB's interpretation "when the matter falls within PERB's area of expertise." (*Id.* at p. 913.)

12

This court has already concluded that the city violated the MMBA when it failed to consult in good faith with Local 1319 before submitting Measure D to its voters. (*City of Palo Alto, supra*, 5 Cal.App.5th at p. 1292.) "The duty to meet and confer is a central feature of the MMBA. Governing bodies . . . are required to engage with unions on matters within the scope of representation 'prior to arriving at a determination of policy or course of action.' (§ 3505.)"[4] (*Boling, supra*, 5 Cal.5th at p. 904.)

The California Supreme Court has consistently held that the MMBA, and particularly its meet and confer provisions, are a matter of statewide concern. "It is indisputable that the procedures set forth in the MMBA are a matter of statewide concern, and are preemptive of contradictory local labor-management procedures." (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 781.) In *People ex rel. Seal Beach Police Officers Assn. v. City of Seal Beach* (1984) 36 Cal.3d 591 (*Seal Beach*), the California Supreme Court held that the meet and confer requirement of section 3505 applies to charter cities, despite the charter amendment provisions contained in article XI, section 3 of the California Constitution. (*Id*. at p. 601.)

In deciding the meet and confer provisions and the charter amendment provisions were compatible, our high court described the statewide importance of the MMBA: "Cities function both as employers and as democratic organs of government. The meet-and-confer requirement is an essential component of the state's legislative scheme for regulating the city's employment practices. By contrast, the burden on the city's democratic functions is minimal." (*Seal Beach, supra*, 36 Cal.3d at p. 599.)

The MMBA's meet and confer provisions do not dictate the substance of a municipality's labor provisions, but they do mandate that municipalities follow a process

---

[4] Although the city in this case violated section 3507, rather than section 3505, in *City of Palo* this court agreed with PERB's analysis that "the 'consultation in good faith' mandated by section 3507 is very much like the 'meet and confer' process mandated under section 3505." (*City of Palo Alto, supra*, 5 Cal.App.5th at p. 1293.)

13

that includes consultation with the affected organizations. Our Supreme Court "emphasize[d] that there is a clear distinction between the substance of a public employee labor issue and the procedure by which it is resolved. Thus there is no question that 'salaries of local employees of a charter city constitute municipal affairs and are not subject to general laws.' [Citation.] Nevertheless, the process by which salaries are fixed is obviously a matter of statewide concern." (*Seal Beach*, *supra*, 36 Cal.3d at p. 600, fn. 11.)

Here, PERB expressly cited " 'statewide concern' " over compliance with the MMBA's meet and consult provisions in deciding that "affirmative relief" was appropriate—namely "an order declaring void the [c]ity's action of July 18, 2011, referring to voters a measure to repeal Article V of the Charter." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at p. 52 [41 PERC ¶ 162].) The city did not seek appellate review of PERB's decision.

### B. *Role of the Attorney General in Quo Warranto Proceedings*

While quo warranto proceedings originated as a common law writ, they have been codified in California and are not equitable proceedings. (*Rando v. Harris* (2014) 228 Cal.App.4th 868, 875 (*Rando*); *International Assn. of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693–694 (*City of Oakland*); *Boling v. Public Employment Relations Bd.* (2019) 33 Cal.App.5th 376, 384.) The procedure for bringing a quo warranto action appears at Code of Civil Procedure sections 803 through 811.[5]

Code of Civil Procedure section 803, which is the substantive statute authorizing the quo warranto proceeding, reads, "An action may be brought by the attorney general,

---

[5] The applicable statutes do not use the nomenclature "quo warranto." The chapter in which the relevant statutes appear is titled, "Actions for Usurpation of an Office or a Franchise." (See Code Civ. Proc., pt. 2, tit. 10, ch. 5.) " 'In practice, however, both courts and lawyers tend to refer to the remedy as 'quo warranto,' certainly a more convenient term than the chapter title.' " (*City of Oakland*, *supra*, 174 Cal.App.3d at p. 693, fn. 10.)

14

in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state.  And the attorney general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor."

As this statute makes clear, the Attorney General plays a central role in regulating the remedy of quo warranto.  "The key to the remedy of quo warranto is that it can only be brought by the Attorney General, on his or her own information or by the request of a private party."[6]  (*Rando*, *supra*, 228 Cal.App.4th at p. 875; Code. Civ. Proc., § 803.)  The gatekeeping role of the Attorney General is intentional.  "The remedy of quo warranto belongs to the state in its sovereign capacity, to protect the interests of the state as a whole and guard the public welfare, and the Attorney General is the proper one to determine, in the first instance, when the public interests justify a resort to this remedy.  'Our law, differing from that of some other states, does not permit a suit in quo warranto to be filed by a private individual.' "  (*People ex rel. Conway v. San Quentin Prison Officials* (1963) 217 Cal.App.2d 182, 183 (*San Quentin Prison Officials*).)

The Attorney General "enjoys consideration discretion" in determining whether to authorize a particular quo warranto action.  (*Rando*, *supra*, 228 Cal.App.4th at p. 875.)

---

[6] There exists a limited exception inapplicable on these facts.  Code of Civil Procedure section 811 provides that proceedings in quo warranto "may be maintained by the board of supervisors of any county or city and county or the legislative body of any municipal corporation, respectively, in the name of such county, city and county or municipal corporation against any person who usurps, intrudes into or unlawfully holds or exercises any franchise, or portion thereof, within the respective territorial limits of such county, city and county or municipal corporation and which is of a kind that is within the jurisdiction of such board or body to grant or withhold."

"[T]he existence of a legal dispute or justiciable issue does not invariably give the Attorney General 'reason to believe' that the conditions mandating a quo warranto action exist. Rather, the Attorney General retains discretion to evaluate the proposed action and address three relevant inquiries: '1. Is quo warranto the proper remedy to resolve the issues which are presented? [¶] 2. Has the proposed relator raised a substantial question of law or fact? [¶] 3. Would the public interest be served by judicial resolution of the question?' " (*Id*. at pp. 878–879.)

The Attorney General's involvement is jurisdictional. A court may not hear an action not brought or authorized by the Attorney General. (See *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 633.)

If an individual or entity (generally referred to as the "relator") seeks to bring a proceeding in quo warranto, they must serve the application for leave to sue on the proposed defendant and on the Attorney General. (Cal. Code Regs., tit. 11, § 1.) The relator must also submit a proposed complaint to the Attorney General. (*Id*., tit. 11, § 2(a).) "The proposed complaint shall be prepared for the signature of the Attorney General, a deputy Attorney General and the attorney for the relator, as attorneys for plaintiff." (*Ibid*.) The proposed complaint may be changed or amended by the Attorney General. But once approved, "the relator shall not thereafter in any way change, amend or alter the said complaint without the approval of the Attorney General." (*Id*., tit. 11, § 7.)

Once the approved complaint is filed by the relator in the name of the People, "the relator has no control of the proceeding. The entire control is in the Attorney General, who may even dismiss the proceeding over the objection of the relator." (*San Quentin Prison Officials*, *supra*, 217 Cal.App.2d at p. 183; see also Cal. Code Regs., tit. 11, § 8 ["The Attorney General may at all times, at any and every stage of the said proceeding, withdraw, discontinue or dismiss the same, as the Attorney General may seem fit and

16

proper; or may, at the Attorney General's option, assume the management of said proceeding at any stage thereof."].)

Code of Civil Procedure section 809 sets out the procedure if a defendant is "adjudged guilty" of violating Code of Civil Procedure section 803. "When a defendant, against whom such action has been brought, is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, judgment must be rendered that such defendant be excluded from the office, franchise, or privilege, and that he pay the costs of the action. The court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars, which fine, when collected, must be paid into the treasury of the state." (Code Civ. Proc., § 809.)

C. *Analysis*

Local 1319 and the city assert we should examine de novo whether the trial court had the authority under Code of Civil Procedure section 809 to issue its selected remedy. We agree with Local 1319 that the language of Code of Civil Procedure section 809 is emphatic. It requires "exclu[sion]" of the person or entity against which the quo warranto proceeding is brought. Nevertheless, we need not reach the question whether Code of Civil Procedure section 809 required invalidation of Measure D. We decide that, assuming arguendo the trial court had the authority to issue a remedy other than "exclusion," on this record, it abused its discretion in so doing.[7]

---

[7] In reaching this conclusion, we do not—and need not—embrace the novel statutory analysis advanced by the dissent. The dissent's statutory argument tracks that of the trial court in its order. This construction of section 809 was not advanced by any party to the quo warranto proceedings in the trial court prior to the issuance of the court's tentative decision. While we have serious doubts about the merits of this reading of section 809, a definitive construction is unnecessary to resolve this appeal. We further disagree with the dissent's concerns about a scenario where the "unlawful exercise of the franchise is followed by extensive public and private action in reliance thereon, which would necessarily have to be undone." (Dis. opn. of Wilson, J., *post*, at p. 13.) Quo warranto does not invalidate actions taken by an entity later found to be created unlawfully. (*McPhee v. Reclamation Dist. No. 765* (1911) 161 Cal. 566, 571–572

17

" 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, and to reversal on appeal where no reasonable basis for the action is shown.' [Citations.] 'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.] . . . [¶] The legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' [Citation.] To determine if a court abused its discretion, we must thus consider 'the legal principles and policies that should have guided the court's actions.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon*).)[8]

---

[discussing the effect of quo warranto proceedings on the act of a reclamation district and stating "[i]f the reclamation district was a de facto corporation, a judgment in quo warranto, even though it should determine that the district had not been legally organized, would not annul or affect the acts performed by it before the judgment in quo warranto. [Citations.] 'A judgment of ouster is not retroactive so as to affect or destroy acts done or contracts made prior to its rendition.' [Citation.] If the assessments when levied were valid because of the de facto character of the corporation, their validity could not be destroyed by a subsequent adjudication, in an action at the suit of the state, that the alleged district had no legal right to corporate existence"].)

[8] The dissent's recitation of cases describing the abuse of discretion standard are not drawn from either of the two contexts at issue in this appeal—quo warranto or PERB's interpretation of the MMBA. (See e.g., *Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 201–202 [examining the appropriate remedy for failing to administer warnings to a police officer in a disciplinary hearing] (Dis. opn. of Wilson, J., *post*, at p. 7); *People v. Jordan* (1986) 42 Cal.3d 308, 311–312 [deciding whether the trial court abused its discretion in striking prison prior enhancements] (Dis. opn. of Wilson, J., *post*, at p. 8); *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 [child support] (Dis. opn. of Wilson, J., *post*, at p. 8).) The procedural context of this appeal is critical to our conclusion that the trial court abused its discretion.

18

In explaining its decision not to invalidate Measure D, the trial court cited local factors related to the city electorate's approval of the measure, the city's good-faith reliance on its misinterpretation of section 3507 and negotiating dynamics between Local 1319 and the city. In so doing, we believe the trial court gave insufficient weight to PERB's conclusion that the parties must be returned to the status quo ante (i.e., before the passage of resolution 9189 and the enactment of Measure D) and to PERB's and the Attorney General's judgment that uniform compliance with the meet and confer requirements of the MMBA are matters of statewide public importance.

The Legislature has invested PERB with primary authority over violations of section 3507. (See § 3509, subd. (b).) Furthermore, PERB has "exclusive jurisdiction" over "the appropriate remedy necessary to effectuate the purposes of [the MMBA]." (*Ibid*.) PERB's decisions in this case reflect an intent to restore, to PERB's maximum authority, the parties to the status quo ante. PERB first ordered the city to rescind resolution 9189 (*PERB City of Palo Alto I*, *supra*, Dec. No. 2388-M at p. 49 [39 PERC ¶ 25]). When this court decided that that remedy was beyond its constitutional authority, PERB ordered the resolution "void." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at p. 53 [41 PERC ¶ 162].) PERB explicitly sought to return the parties to the "prior status quo" (*id*. at p. 49) and had the authority to do so. In its prior opinion, this court held that PERB may void resolution 9189, which would "effectively return[] the parties to the status quo ante." (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1317.) This court stated that PERB's decision to void the resolution would have "the affirmative effect of 'undoing' the invalid act." (*Ibid*.) Both PERB and this court recognized that PERB lacked the authority to invalidate Measure D, which act could only be accomplished in the quo warranto proceeding that is now before us. (*Id*. at p. 1301.)

PERB specifically rejected the city's argument that it could consult with the union in good faith if the changes made by Measure D were still part of the city charter. In its decision, PERB found, "A policy change subject to the duty to meet and confer and

19

implemented without meeting and conferring, is a fait accompli, which, if left in place, would compel the union to 'bargain back' to the status quo [citations] and make impossible the give and take that are the essence of good faith consultation." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at p. 49 [41 PERC ¶ 162].)

In its amicus brief filed in this appeal, PERB reiterates its findings. "[T]he Board determined that on the basis of the evidence presented to it, the appropriate remedy for the [c]ity's violation of the MMBA was to declare its resolution placing Measure D on the ballot void. [Citation.] The Board's jurisdiction to grant this remedy was specifically authorized by this Court. (*City of Palo Alto*, *supra*, 5 Cal.App.5th [at p.] 1320.) . . . [T]he Board's remedy was intended to restore the status quo." In this court, PERB argues that the trial court's decision "subverts PERB's jurisdiction to award an appropriate remedy to effectuate the purposes of the MMBA under section 3509, subdivision (b)."

A city's good faith is not relevant to whether it has violated the MMBA or to mitigating its remedy. "California courts have adopted the private sector view that unilateral action constitutes a per se violation of the MMBA, and must therefore be set aside until the 'meet and confer in good faith' duty has been met by the employer." (*Vernon Fire Fighters v. City of Vernon* (1980) 107 Cal.App.3d 802, 824.)

In selecting the remedy of voiding resolution 9189, PERB explicitly relied on the statewide importance of municipal compliance with the MMBA. (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at pp. 48, 52 [41 PERC ¶ 162].) As amicus, PERB points out that the trial court's order "eliminates a level playing field, firmly putting Local 1319 in a serious disadvantage in bargaining." PERB asserts that "[a]t stake is the Board's ability to effectively remedy violations of the MMBA." It notes that other jurisdictions have attempted to circumvent their obligation to meet and confer by submitting the matter directly to the voters. "If public agencies are permitted to benefit

20

from the fruits of their violations, this strategy may be used to erode enforcement of the MMBA."

We recognize that the trial court here was deciding a quo warranto complaint brought on behalf of the People of the State of California, rather than engaging in direct appellate review of a decision by PERB. Nevertheless, the concepts of deference to administrative expertise enacted by the Legislature in section 3509 subdivision (b), embody " 'the legal principles and policies that should have guided the court's actions.' " (*Sargon*, *supra*, 55 Cal.4th at p. 773.)

We believe the trial court failed to give PERB's selection of a remedy that would fully restore the status quo "the deference to which it was due." (*Boling*, *supra*, 5 Cal.5th at p. 917.) We disagree with the city's and dissent's contention that the trial court's order effectively restored the status quo.[9] While it is true that the court ordered that the city "may not rely upon the passage of Measure D by a majority of voters" and may not forgo article V's pre-2011 requirement of binding interest arbitration unless and until it consults in good faith, the trial court's order falls short of invalidating Measure D.

The trial court's selection of a remedy also did not provide sufficient deference to the principles guiding actions in quo warranto. As described above, the Attorney General exercises significant control over the quo warranto process. When deciding to authorize a private party to file suit, the Attorney General considers whether the public interest is served by judicial resolution of the question. (*Rando*, *supra*, 228 Cal.App.4th at p. 879.)

The Attorney General cannot dictate to courts a legal result without violating separation of powers principles. Nevertheless, in evaluating the trial court's order in the

---

[9] It is significant to our conclusion that PERB itself disagrees with the dissent's view that the trial court's order has "effectively [] restored" the status quo. (Dis. opn. of Wilson, J., *post*, at p. 9.) In its amicus brief filed in this court, PERB wrote, "The [s]uperior [c]ourt declined to invalidate Measure D, allowing it to go into effect once the [c]ity completes good-faith consultation with IAFF. But this arrangement is not equivalent to restoring the status quo before the [c]ity's unlawful conduct."

21

distinctive context of a quo warranto proceeding, it is relevant that the court's chosen remedy is inconsistent with the Attorney General's explanation for authorizing the suit. In his written explanation, the Attorney General described the purpose of the quo warranto proceeding here as "overturn[ing] Measure D." (103 Ops.Cal.Atty.Gen., *supra*, at p. 3.) The public interest was " 'ensuring charter amendments are validly enacted.' " (*Id*. at p. 4.) Further, in his written authorization, the Attorney General noted that the city's own counsel "indicated that binding interest arbitration would not be restored absent quo warranto." (*Ibid*.)

The complaint the Attorney General authorized sought as relief a determination that the charter amendment suspending article V was "null and void" and an order to the city that it must "restore the pre-amendment portion of [a]rticle V of the [c]ity's [c]harter requiring mandatory binding interest arbitration of collective bargaining impasses with police and firefighter employee organizations."[10]

There is no indication in any of the materials in the record issued or authorized by the Attorney General that the quo warranto proceeding contemplated any remedy other than invalidation of Measure D. Both PERB and this court had previously and repeatedly indicated that that remedy was available only through quo warranto proceedings and did not mention the possibility that the quo warranto proceedings, if successful, would produce any other result.

The city has not cited a single decision from any successful quo warranto proceeding in the State of California in which the relief granted was *not* ouster of the defendant or invalidation of the measure that was unlawfully enacted. While we have declined to decide whether Code of Civil Procedure section 809 mandated that the trial court invalidate Measure D, the definitive language of that statute highlights that the legal principles applicable to quo warranto in California place a heavy justificatory burden on

---

[10] The complaint also sought costs of suit and "further relief as the [c]ourt deems just and proper."

any exercise of discretion that does not result in exclusion or invalidation. (See e.g., *Daly v. San Bernadino County Bd. of Supervisors* (2021) 11 Cal.5th. 1030, 1051–1052 ["Had plaintiffs proceeded by quo warranto and prevailed on the merits, they would have obtained an immediately enforceable judgment that Rowe 'be excluded from the office.' (Code Civ. Proc., § 809.)"].)

Further, the city has consistently maintained throughout the litigation that the only legal mechanism to invalidate Measure D was exclusively through the courts by a quo warranto writ. (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1319.) Indeed, before this court, the city argued that PERB lacked jurisdiction because it could not issue an "effective remedy" (*id*. at p. 1318) because PERB itself could not "invalidate the ballot measure." (*Id*. at p. 1319.) Given its previous litigating position, the city's current argument that the quo warranto proceeding should *not* result in invalidation of Measure D rings hollow.

In addition to lacking legal precedent, the trial court's decision not to invalidate Measure D rests on factors that are inconsistent with prior findings by PERB and this court. In its discussion, the trial court emphasized the city's violation "was committed in good-faith reliance on a misinterpretation of section 3507." However, this court previously decided in this matter that "PERB's decision that binding arbitration is subject to the good faith consultation requirement of section 3507 does *not* represent a change in the law." (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1301, italics added.)

The city therefore took a calculated risk that its behavior would not violate the MMBA. As PERB found, the city "acted unilaterally and engaged in 'self-help' on July 18, 2011, when, without having consulted to agreement or impasse, it approved a ballot measure to repeal the interest arbitration procedures in its [c]harter." (*PERB City of Palo Alto II*, *supra*, Dec. No. 2388a-M at pp. 39–40, [41 PERC ¶ 162].) PERB acknowledged that the city had the right to make the change ultimately adopted in Measure D, but the consultation requirement was relevant to the timing of the submission of the issue to the

23

electorate. (*Id*. at p. 41.) PERB concluded that the city's enactment of the resolution referring Measure D to the voters "was neither justified nor excused." (*Id*. at p. 42.)

PERB's decision to void the resolution that led to Measure D was made in part to deter other municipalities from engaging in similar behavior. We conclude the trial court insufficiently deferred to PERB's expertise on this point. (See § 3509, subd. (b).)

The trial court was reluctant to "override[] the clearly expressed will of the local electorate." The trial court emphasized that 67 percent of the voters who voted in the election voted to approve Measure D. The trial court's consideration of the details of the local election over the statewide considerations that led to PERB's selection of a remedy and the Attorney General's leave to sue was error. By definition, a successful quo warranto challenge to the submission of an issue to the voters undermines the will of the electorate. But "electors . . . lack the power to ratify a defective ballot measure." (*Pulskamp v. Martinez* (1992) 2 Cal.App.4th 854, 861.)

With respect to the MMBA, the California Supreme Court has emphasized the difference between "the substance of a public employee labor issue and the procedure by which it is resolved." (*Seal Beach*, *supra*, 36 Cal.3d. at p. 600, fn. 11.) It is conclusively established that the city violated the MMBA in enacting resolution 9189 (settled in this court's prior decision) and in submitting Measure D to the voters (decided by the trial court in these quo warranto proceedings). "When determining a public agency's MMBA obligation to bargain the effects of ballot measures, courts have focused on the decisions or actions regarding placement of the measure on a ballot rather than the measure's subsequent enactment." (*County of Sonoma v. Public Employment Relations Board* (2022) 80 Cal.App.5th 167, 187.) The city's failures here were not merely technical but went to the central feature of "an essential component of the state's legislative scheme for regulating the city's employment practices." (*Seal Beach*, at p. 599.) In this context, the views of the city's voters are not dispositive because the question was not lawfully before them.

24

It appears the trial court believed that the city has no intention of retaining binding interest arbitration, and therefore invalidating Measure D would simply result in additional delay but ultimately produce the same result. It stated, "[t]he record supplies no hint that consultation in good faith, had it been granted as Local 1319 clearly requested, would have produced a different [c]ouncil resolution or a different electoral outcome." Reliance on this factor was not appropriate on these facts.

This court has already held that PERB has the authority to void resolution 9189, which would "effectively return[] the parties to the status quo ante" and " 'undo[]' the invalid act. " (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1317.) Returning the parties to the status quo ante means returning them to the legal state as it existed before resolution 9189 was enacted. The trial court's order did not do so, even as it agreed with PERB and this court's prior decision that the city had acted unlawfully in enacting the resolution without first engaging in good faith consultation with Local 1319.

We appreciate that the trial court in its order sought to balance a number of factors, particularly the expressed will of the local electorate, the length of the litigation over Measure D, and the city's right to eliminate binding interest arbitration if it does so in a procedurally lawful manner. Nevertheless, in crafting its remedy the trial court gave insufficient weight to the findings and remedy selected by PERB and relied excessively on factors already addressed in the prior adjudications by PERB and this court.

We conclude that, given PERB's prior findings, once the trial court determined in the quo warranto action that the city's submission of Measure D to the voters violated the MMBA, it abused its discretion in refusing to invalidate it.[11] We therefore reverse the judgment and remand the matter for the trial court to issue an order that commands the city to restore the pre-amendment portion of article V of the city's charter, invalidates Measure D, and provides any other appropriate relief consistent with the views herein.

[11] In light of this conclusion, we need not decide whether the trial court's order violated the California Constitution, the city charter, or the Elections Code.

### III.  DISPOSITION

The judgment is reversed.  On remand, the trial court is directed to enter a new judgment (1) ordering the city to restore the preamendment portion of article V of the city's charter, (2) invalidating Measure D, and (3) providing any other appropriate relief consistent with the views expressed in this opinion.

Appellants are entitled to recover their reasonable costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Danner, J.

I CONCUR:

_____

Greenwood, P. J.

**H049992**
***The People ex rel. IAFF v. City of Palo Alto***

WILSON, J., Dissenting.


I respectfully dissent. First, I would expressly address the chief legal issue presented in this appeal—whether Code of Civil Procedure section 809[12] mandates the invalidation of the unlawful exercise of a franchise. In such cases, I would conclude that section 809 vests the trial court with discretion to fashion an appropriate remedy. As discussed in more detail below, in drafting section 809, the Legislature elected not to specify any particular remedies for the unlawful exercise of a franchise. Instead, the Legislature determined that the task was best left to trial courts on a case-by-case basis, to be reversed only if there has been a prejudicial abuse of discretion.

Second, I would then conclude that the trial court did not abuse its discretion here by fashioning a remedy that does not directly invalidate Measure D. I believe the trial court crafted a remedy which ensures that the City may not enforce or rely on Measure D and ensures the parties will be returned to the status quo ante. As this court stated in *City of Palo Alto*, PERB's order declaring resolution 9189 void already "effectively returns the parties to the status quo ante." (*City of Palo Alto v. Public Employment Relations Bd.* (2016) 5 Cal.App.5th 1271, 1317 (*City of Palo Alto*).) The trial court's order clarifies that Measure D is of no force and effect. In addition, the trial court's order mandates that the City consult in good faith with the International Association of Firefighters, Local 1319, AFL-CIO (Local 1319)—as determined by the Public Employment Relations Board (PERB)—before Measure D could take effect. In my view, if the majority believes the trial court improperly considered or weighed certain factors and thereby abused its discretion in fashioning a remedy, it should have remanded the case back to the trial court with directions to properly exercise its discretion. Otherwise, the majority's decision today risks replacing the trial court's discretion with its own.

_____

[12] Unspecified statutory references are to the Code of Civil Procedure.

Given the Legislature's policy choice in section 809, and the deferential standard of appellate review of a trial court's discretionary actions, I would conclude that the trial court's decision here was not arbitrary and capricious and did not constitute a manifest miscarriage of justice. Consequently, I would affirm the judgment.

### A. Section 809

The common law writ of quo warranto is now codified in sections 802 through 811, enacted in their current form in 1872. (Code Civ. Proc., §§ 802-811; *International Association of Fire Fighters v. City of Oakland* (1985) 174 Cal.App.3d 687, 693, fn. 10 (*IAFF*).)

Section 803, which authorizes a quo warranto action, provides: "An action may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon a complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office, civil or military, or any franchise, or against any corporation, either de jure or de facto, which usurps, intrudes into, or unlawfully holds or exercises any franchise, within this state. And the attorney-general must bring the action, whenever he has reason to believe that any such office or franchise has been usurped, intruded into, or unlawfully held or exercised by any person, or when he is directed to do so by the governor." (§ 803; see also *People ex rel. Schlesinger v. Sachs* (2023) 97 Cal.App.5th 800, 814.)

A quo warranto action may be brought to seek the ouster of a person unlawfully holding office. (*Daly v. San Bernardino County Board of Supervisors* (2021) 11 Cal.5th 1030, 1051.) It may also be brought to "test the regularity of proceedings by which municipal charter provisions have been adopted" (*IAFF, supra*, 174 Cal.App.3d at p. 694), and to challenge " 'purported irregularities in the legislative process of a charter amendment which has taken effect.' " (*Boling v. Public Employment Relations Bd.* (2019) 33 Cal.App.5th 376, 384, quoting *Pulskamp v. Martinez* (1992) 2 Cal.App.4th 854, 859.)

The quo warranto statutes also set forth certain remedies, discretionary or mandatory, depending on the nature of the action.  Section 805, for instance, provides that, "[i]n every such action judgment may be rendered upon the right of the defendant, and also upon the right of the party so alleged to be entitled, or only upon the right of the defendant, as justice may require."  (§ 805.)

Similarly, section 806 provides:  "If the judgment be rendered upon the right of the person so alleged to be entitled, and the same be in favor of such person, he will be entitled, after taking the oath of office and executing such official bond as may be required by law, to take upon himself the execution of the office."  (§ 806.)

Section 807 provides:  "If judgment be rendered upon the right of the person so alleged to be entitled, in favor of such person, he may recover, by action, the damages which he may have sustained by reason of the usurpation of the office by the defendant."  (§ 807.)

And, finally, section 809 provides:  "When a defendant, against whom such action has been brought, is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, judgment must be rendered that such defendant be excluded from the office, franchise, or privilege, and that he pay the costs of the action. The Court may also, in its discretion, impose upon the defendant a fine not exceeding five thousand dollars, which fine, when collected, must be paid into the Treasury of the State." (§ 809.)

In interpreting section 809, I begin with the plain language of the statute.  (*San Jose Unified School District v. Santa Clara County Office of Education* (2017) 7 Cal.App.5th 967, 975.)[13]

---

[13] As the majority and all parties recognize, there do not appear to be any cases addressing the question whether section 809's mandatory remedy of exclusion applies where a defendant is adjudged guilty of unlawfully exercising its franchise.

The first sentence of section 809 provides that a specific type of judgment *must be* rendered in specified circumstances: "When a defendant, against whom such action has been brought, is adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, judgment must be rendered that such defendant be excluded from the office, franchise, or privilege, and that he pay the costs of the action." (§ 809.) By contrast, the second sentence of section 809 provides that the court "may also, in its discretion," impose a fine. (§ 809.)

" 'Courts routinely construe the word 'may' as permissive and words like 'shall' or 'must' as mandatory. [Citations.]' " (*Mijares v. Orange County Employees' Retirement System* (2019) 32 Cal.App.5th 316, 329, quoting *Jones v. Catholic Healthcare West* (2007) 147 Cal.App.4th 300, 307.) The first sentence of section 809 is thus mandatory when it applies. The task, then, is to determine when that mandatory provision applies and whether it applies here.

The statute expressly provides that the specified judgment must be rendered when the defendant is "adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise or privilege." (§ 809.) Section 809 therefore mandates its specified remedy—exclusion from the office, franchise or privilege—only when the defendant has usurped or intruded into, or unlawfully held an office, franchise or privilege. It does not, however, mandate that remedy when the defendant has unlawfully *exercised* an office, franchise or privilege.

Because section 803 separately enumerates these specific acts—usurping, intruding into, unlawfully holding, and unlawfully exercising—they have distinct meanings. (*In re J.W.* (2002) 29 Cal.4th 200, 209 [courts presume every part of a statute serves a purpose and nothing is superfluous]; *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [expression of one thing in a statute ordinarily implies the exclusion of other things].) In other words, the terms "usurps," "intrudes into," and "unlawfully holds" do not include the term, or have the same meaning as, "unlawfully exercises."

By omitting "unlawfully exercises," Section 809 stands in contrast to section 803, which authorizes an action "against any person who usurps, intrudes into, or unlawfully holds *or exercises* any public office, civil or military, or any franchise…." (§ 803, emphasis added.) Similarly, section 811, enacted in 1937, notably includes the language "or exercises," thus also standing in contrast to section 809: "The action provided for in this chapter may be maintained by the board of supervisors of any county or city and county or the legislative body of any municipal corporation, respectively, in the name of such county, city and county or municipal corporation against any person who usurps, intrudes into or unlawfully holds or exercises any franchise, or portion thereof, within the respective territorial limits of such county, city and county or municipal corporation and which is of a kind that is within the jurisdiction of such board or body to grant or withhold." (§ 811.) Courts "must assume that when passing a statute the Legislature is aware of existing related laws and intends to maintain a consistent body of rules." (*Fuentes v. Workers' Compensation Appeal Board* (1976) 16 Cal.3d 1, 7, citing *Estate of Simpson* (1954) 43 Cal.2d 594, 600.)

It is also a " 'settled rule of statutory construction that where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes.' " (*In re Jennings* (2004) 34 Cal.4th 254, 273, quoting *People v. Norwood* (1972) 26 Cal.App.3d 148, 156.)

Moreover, " '[w]here a statute referring to one subject contains a critical word or phrase, omission of that word or phrase from a similar statute on the same subject generally shows a different legislative intent.' " (*In re Young* (2004) 32 Cal.4th 900, 907, quoting *Craven v. Crout* (1985) 163 Cal.App.3d 779, 783; see also *Peoples v. San Diego Unified School District* (2006) 138 Cal.App.4th 463, 472 [where statute contains words in one statute and does not include same language in another similar statute, Legislature intended to omit the concept in the second statute].)

In interpreting a statute, courts "consider the language of the entire scheme and related statutes, harmonizing the terms when possible." (*Riverside County Sheriff's Dept. v. Stiglitz* (2014) 60 Cal.4th 624, 632.) In addition, "[i]t is not within our province to interpret the statute as if it contained language that the Legislature chose to omit." (*Geneva Towers Limited Partnership v. City of San Francisco* (2003) 29 Cal.4th 769, 780.) "We presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language." (*Ryze Claim Solutions LLC v. Superior Court* (2019) 33 Cal.App.5th 1066, 1072, quoting *Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894; see also *Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 949 ["our goal is to interpret the language of the statute—not to insert what has been omitted or omit what has been inserted"].)

Applying these maxims here, I would interpret the plain language of section 809 to apply its mandatory remedy of exclusion only when the defendant is adjudged guilty of the specifically enumerated acts—usurping or intruding into, or unlawfully holding any office, franchise or privilege—but not when adjudged guilty of unlawfully *exercising* an office, franchise or privilege.

The language of the statute is clear in this respect, and the analysis need go no further. (*People v. Flores* (2003) 30 Cal.4th 1059, 1063.) Only when some ambiguity remains or the statute is susceptible of more than one reasonable interpretation may courts look to extrinsic aids.[14] (*In re M.M.* (2012) 54 Cal.4th 530, 536.)

---

[14] This reading of the statute is also consistent with the nature of a quo warranto action, which has been described as "a preventative remedy addressed to preventing a continuing exercise of an authority unlawfully asserted rather than to correcting what has already been done under that authority." (*Citizens Utilities Co. v. Superior Court* (1976) 56 Cal.App.3d 399, 406, citing *People v. Muehe* (1931) 114 Cal.App. 739, 740.)

Because the City was not adjudged guilty of usurping or intruding into, or unlawfully holding any office, franchise, or privilege, I would hold that the mandatory remedy of exclusion set forth in section 809 does not apply here.

### B. *Abuse of discretion analysis*

Although section 809 mandates the remedy of exclusion in the designated circumstances discussed above, it is silent—as are the other quo warranto statutes—regarding the appropriate remedy for the unlawful exercise of a franchise. As a general rule, "[t]he violation of a statute gives to any person within the statute's protection a right of action to recover damages caused by its violation." (*Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit District* (1976) 65 Cal.App.3d 121, 131 (*Yellow Cab*).) Where the right is created by statute, "the party aggrieved by its violation is confined to the statutory remedy if one is provided." (*Id.*, citing *County of Monterey v. Abbott* (1888) 77 Cal. 541, 543.) But where a statute does not specify a particular remedy, "any appropriate common[-]law remedy may be resorted to." (*Yellow Cab, supra*, at p. 131, citing *Roberts v. Landecker* (1858) 9 Cal. 262, 267; see also *Paxton v. Paxton* (1907) 150 Cal. 667, 670 "[W]here the right is given by statute without any prescribed remedy, it may be enforced by any appropriate method recognized by the general law of procedure."].)

Applying these principles here, I would conclude the trial court had discretion to fashion an appropriate remedy after adjudging the City guilty of unlawfully exercising the franchise within the meaning of section 803. "We think it plain that the Legislature, in lieu of attempting to specify particular remedies for particular violations, determined that the task was best left to the courts on a case-by-case basis." (*Williams v. City of Los Angeles* (1988) 47 Cal.3d 195, 203 (*Williams*).)

In such circumstances, a trial court's decision will be reversed only if there has been a prejudicial abuse of discretion. (*Williams, supra,* 47 Cal.3d at p. 204.) " ' "To be entitled to relief on appeal ... it must clearly appear that the injury resulting from such a

wrong is sufficiently grave to amount to a manifest miscarriage of justice....” ’ [Citation.].” (*Baggett v. Gates* (1982) 32 Cal.3d 128, 143.) “However, ‘discretion may not be exercised whimsically and, accordingly, reversal is appropriate “where no reasonable basis for the action is shown.” [Citation.]’ [Citations.]” (*Ibid*.) “Where, as here, a discretionary power is inherently or by express statute vested in the trial judge, his or her exercise of that wide discretion must not be disturbed on appeal *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.” (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

In my view, the majority’s analysis does not appear to adequately recognize the trial court’s discretion. Instead, the majority concludes that, on these facts, the successful challenge brought pursuant to section 803 “requires invalidation” of Measure D. In other words, the majority appears to hold that the trial court had *no* discretion here. Although the majority proceeds to identify specific factors it claims formed the basis of the trial court’s abuse of discretion, under the analysis provided, it would not appear to matter what factors the trial court relied on. As in other contexts, when balancing applicable factors, a trial court has the discretion to determine the appropriate weight to accord to each. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 304, citing *In re Marriage of Baker* (1992) 3 Cal.App.4th 491, 498; *People v. Myers* (1999) 69 Cal.App.4th 305, 310 [“Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court’s ruling, even if we might have ruled differently in the first instance.”].)

Notwithstanding those standards, the majority finds the trial court “gave insufficient weight to PERB’s conclusion that the parties must be returned to the status quo ante (i.e., before the passage of resolution 9189 and the enactment of Measure D)” (Maj. Opn., *ante*, at p. 21), and it “disagree[s] with the city’s contention that the trial court’s order effectively restored the status quo.” (Maj. Opn., *ante*, at p. 21.)

The majority also assumes, without setting forth factual or legal support, that "status quo ante" necessarily means "before the passage and enactment of Measure D." (Maj. Opn., *ante*, at p. 6.) On the contrary, though, this court explicitly stated in *City of Palo Alto* that "a declaration that the City Council's resolution is void effectively returns the parties to the status quo ante. [Citations.] It has the affirmative effect of 'undoing' the invalid act without impermissibly infringing on legislative powers." (*City of Palo Alto, supra,* 5 Cal.App.5th at p. 1317.)

In other words, this court has already held that the "status quo ante" consists of PERB declaring the underlying resolution void, without also requiring Measure D to be rescinded. In light of that, I do not join the majority's determination that the trial court's remedy—which followed PERB's voiding of the resolution and provided *further* relief— did not effectively restore the status quo, which had *already* been effectively restored.

I also disagree with the majority's interpretation of PERB's decision, to which it determines the trial court did not give sufficient weight. PERB did not conclude that Measure D must be rescinded or invalidated. Instead, it concluded that the appropriate remedy is "a cease and desist order, coupled with affirmative relief consisting of an order to restore the status quo and an order to consult in good faith upon request." Consistent with this court's prior decision in *City Palo Alto*, PERB's voiding of the underlying resolution already effectively returned the parties to the status quo ante.

The majority relies in part on the statement in PERB's decision that, " 'A policy change subject to the duty to meet and confer and implemented without meeting and conferring, is a fait accompli, which, if left in place, would compel the union to 'bargain back' to the status quo [citations] and make impossible the give and take that are the essence of good faith consultation. [Citation].'" (Maj. Opn., *ante*, at p. 5.) I do not agree that the trial court's remedy forces the union to bargain back to the status quo. First, the status quo has already effectively been restored. Second, the trial court's remedy expressly requires the City to consult in good faith, as determined by PERB. As the trial

court stated, it had "no reason to doubt PERB's ability to adjudicate any future claim that the City failed to consult in good faith."

I also disagree with the majority's conclusion that the trial court did not give sufficient deference to "PERB's and the Attorney General's judgment that uniform compliance with the meet and confer requirements of the MMBA are matters of statewide public importance." (Maj. Opn., *ante*, at p. 19.) The trial court expressly acknowledged and considered the statewide importance of the MMBA. It simply also considered the interest of the City's voters, which it characterized as one of "shared statewide concern, not unlike the statewide public interest in adherence to section 3507."

The majority emphasizes the fact that, "[i]n selecting the remedy of voiding resolution 9189, PERB explicitly relied on the statewide importance of municipal compliance with the MMBA. (*PERB City of Palo Alto II, supra,* Dec. No. 2388-M at pp. 48, 52 [41 PERC ¶ 162].)" (Maj. Opn., *ante*, at p. 20.) But I do not believe the trial court's remedy alters that, as resolution 9189 remains voided and the City may not rely on or enforce Measure D unless and until it consults with Local 1319 in good faith.

Although the majority may have preferred that the trial court grant *more* deference to the statewide importance of the MMBA, that preference does not equate to an abuse of discretion by the trial court. As a reviewing court, unless we determine that the ultimate decision or remedy constitutes a manifest miscarriage of justice, I believe we are required to defer to the trial court's exercise of its discretion here.

I also disagree with the majority's conclusion that the trial court's remedy "[failed] to provide sufficient deference to the principles guiding actions in quo warranto" (Maj. Opn., *ante*, at p. 21), in particular the role of the Attorney General in the process. In my view, as set forth above, the principles guiding actions in quo warranto include the Legislature's decision not to extend the mandatory remedy of section 809 to the unlawful exercise of a franchise, and instead to vest trial courts with the discretion to determine the appropriate remedy. The Legislature's decision to structure the quo warranto statutes in

this manner operates within the same framework that recognizes the Attorney General's role in the process.

Although the majority recognizes that the Attorney General "cannot dictate to courts a legal result without violating separation of powers principles," (Maj. Opn., *ante*, at p. 21) it nevertheless emphasizes its belief that the trial court's "chosen remedy is inconsistent with the Attorney General's explanation for authorizing the suit." As a threshold matter, I do not agree that the trial court's chosen remedy is inconsistent with anything in the Attorney General's authorization for the action. Furthermore, I disagree with the majority's view that the Attorney General described the purpose of the quo warranto proceeding here as "overturn[ing] Measure D." Instead, I believe the most salient language from the Attorney General regarding the purpose of the quo warranto action was: "we conclude that Local 1319 has presented a substantial issue of fact or law: *whether a writ of quo warranto should issue to overturn Measure D* on account of the City's violation of the MMBA." (103 Ops.Cal.Atty.Gen. 1, 3 (2020), emphasis added.) In other words, the purpose was to allow the judicial branch to determine *whether to* overturn Measure D. Deferring to the Attorney General's chosen or suggested outcome would risk abdicating the role of the judiciary in quo warranto actions.

The majority emphasizes the fact that the City "has not cited a single decision from any successful quo warranto proceeding in the State of California in which the relief granted was *not* ouster of the defendant or invalidation of the measure that was unlawfully enacted." (Maj. Opn., *ante*, at p. 22.) Yet, as the majority and all parties here recognize, there does not appear to be any case law at all addressing whether section 809's mandatory remedy of exclusion applies to the *unlawful exercise of the franchise*. Consequently, I would not hold either party to blame for lack of case authority addressing this specific issue.

Lastly, I disagree with the majority's conclusion that the trial court's decision not to invalidate Measure D "rests on factors that are inconsistent with prior findings by

PERB and this court." (Maj. Opn., *ante*, at p. 23.) The majority first cites the trial court's determination that the city's violation of section 3507 "was committed in good-faith reliance on a misinterpretation of section 3507," apparently believing that is inconsistent with this court's statement that "PERB's decision that binding arbitration is subject to the good faith consultation requirement of section 3507 does *not* represent a change in the law." (*City of Palo Alto*, *supra*, 5 Cal.App.5th at p. 1301, italics added.) But I do not believe there is inconsistency. This court's statement interpreting section 3507—which post-dated the City's interpretation of the law in the context of submitting Measure D to the voters—means only that the City's interpretation was incorrect, not that it was made in bad faith.

Similarly, the majority concludes that the "[t]rial court's consideration of the details of the local election over the statewide considerations that led to PERB's selection of a remedy and the Attorney General's leave to sue was error." (Maj. Opn., *ante*, at p. 24.) However, I do not construe the trial court's order as prioritizing the details of the local election *over* any statewide considerations. In my view, the trial court considered both factors, among others, in crafting its remedy. Although the majority states that "the views of the city's voters are not dispositive," (Maj. Opn., *ante*, at p. 24) the trial court did not treat them as dispositive, but rather as relevant in this context. I am not aware of any authority, and none has been cited by the majority, for the proposition that the trial court was precluded from considering the details of the local election as part of its balancing process.

Finally, I have two additional concerns with the majority's approach here. First, as I have noted, the majority states that this successful section 803 action "requires invalidation" of Measure D, a determination that seems inconsistent with its subsequent analysis and consideration of factors on which the trial court relied. In my view, if the only acceptable remedy here was invalidation of Measure D, it would appear immaterial how the trial court arrived at its remedy or what factors it considered. Typically, when a

reviewing court concludes that a trial court has abused its discretion by considering improper factors, the matter will be remanded for the trial court to exercise its discretion by considering proper factors. (*See, e.g., Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 159 [where discretion was exercised in a manner exceeding applicable legal standards, proper remedy is to reverse and remand to the trial court " 'to give it the opportunity to make a ruling that comports with those standards' "]; *Grossmont Union High School District v. Diego Plus Education Corp.* (2023) 98 Cal.App.5th 552, 585.) Here, though, the majority remands with directions to enter an order with a specific remedy, essentially holding that the trial court lacked discretion altogether. Again, I believe section 809 provides to the contrary.

Second, I have concerns about the implications of a holding that the trial court was effectively required to craft a specific remedy (i.e., invalidation of Measure D) upon the unlawful exercise of a franchise in a quo warranto action. I recognize that the majority has limited its holding to the particular facts of this case. Nevertheless, as I have explained, I construe the majority's holding as determining that the trial court lacked discretion altogether here. Future litigants will undoubtedly analogize to that holding in other contexts to argue that any unlawful exercise of the franchise must similarly be directly invalidated. Not only do I believe the Legislature has expressly provided to the contrary, but I worry that such an interpretation could have unintended and problematic consequences in certain contexts, particularly where an unlawful exercise of the franchise is followed by extensive public and private action in reliance thereon, which would necessarily have to be undone. I believe the Legislature intended that courts retain discretion to determine the appropriate remedy in such circumstances.

In this case I do not believe the trial court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice— so with respect, I dissent.


_____

WILSON, J.

*People ex rel. IAFF, Local 1319 v. City of Palo Alto*
H049992

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Hon. Cynthia C. Lie |
| Counsel for Plaintiff and Appellant The People ex rel. IAFF, Local 1319, AFL-CIO: | Kathleen Natalina Storm Mastagni Holstedt A.P.C. |
| Counsel for Amicus Curiae Peace Officers Research Association of California and Peace Officers Research Association of California Legal Defense Fund on behalf of Plaintiff and Appellant: | Brandi L. Harper Kasey A. Castillo Montana L. Massone Castillo Harper |
| Counsel for Amicus Curiae Oakland Police Officers' Association, International Association of Fire Fighters, Local 55, AFL-CIO, San Francisco Police Officers' Association, International Association of Fire Fighters, Local 798, AFL-CIO and Palo Alto Police Officers' Association on behalf of Plaintiff and Appellant: | Zachary A. Lopes Rains Lucia Stern St. Phalle & Silver, PC  Michael A. McGill Ferrone & Ferrone Law Group |
| Counsel for Amicus Curiae Public Employment Relations Board on behalf of Plaintiff and Appellant: | J. Felix De La Torre Wendi L. Ross Daniel M. Trump Public Employment Relations Board |
| Counsel for Amicus Curiae California Professional Firefighters Association on behalf of Plaintiff and Appellant: | Muna Busailah Stone Busailah, LLP |
| Counsel for Amicus Curiae International Association of Fire Fighters on behalf of Plaintiff and Appellant: | Art Traynor Mark Murphy Tamara Imam Mooney, Green, Saindon, Murphy & Welch, P.C. |
| Counsel Respondent City of Palo Alto: | Charles D. Sakai Eric F. Della Santa Sloan Sakai Yeung & Wong LLP |

*People ex rel. IAFF, Local 1319 v. City of Palo Alto*
H049992